**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| VESAL YAGHOOBI, | |
| Plaintiff, | No. 23-cv-12464-DLC |
| v. | |
| TUFTS MEDICAL CENTER, INC.; TUFTS MEDICINE, INC.; MATTHEW SHORTELLE, JD; KARI ROBERTS, MD; ADNAN QAMAR, MD; ZAHRA JALALI, MD; JUSTIN POPSO, MD, | |
| Defendants. | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS (D. 57)**

CABELL, U.S.M.J.

Plaintiff Vesal Yaghoobi has brought an action against several individuals and entities for events arising from her time as a pathology resident at Tufts Medical Center, Inc., ("Tufts Medical Center" or "TMC"). Seven of the defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the operative amended complaint against them for failure to state a viable claim. They include (1) Tufts Medical Center ("TMC"); (2) Tufts Medicine, Inc.[1]; (3) TMC Director of Health and Human Services Matthew Shortelle ("Shortelle"); (4) TMC physician Kari Roberts, MD; (5)

---

[1] According to its website, Tufts Medicine is a network of healthcare providers that includes a number of hospitals and hundreds of doctor offices. *About Us*, Tufts Medicine, https://www.tuftsmedicine.org/about-us (last visited Jan. 6, 2025).

TMC physician Adnan Qamar, MD; (6) TMC physician Zahra Jalali, MD; and (7) TMC physician Justin Popso, DO.  For the reasons that follow, the defendants' motion is granted in part and denied in part.

## I.   Relevant Background

Accepting the amended complaint's salient allegations as true, Yaghoobi in 2023 was a third-year pathology resident at Tufts Medical Center.  In early August 2023, she discovered what she believed to be "systematic medical fraud," including "non-standard medical notes and pathology specimens."  On August 23, 2023, after noticing "significant discrepancies" between a specimen she was studying and the notes relating to that specimen, she conveyed her misgivings to the chief resident, defendant Dr. Adnan Qamar, who dismissed her concerns.

On the following day, August 24, Yaghoobi arrived at work and discovered that TMC had revoked her access to her work email and her ID badge had been deactivated.  Shortly thereafter, TMC personnel brought her to the emergency room and involuntarily placed her under psychiatric observation and forced her to undergo a mental health evaluation.  Yaghoobi's records were also manipulated to reflect that her admission was voluntary.

Following the incident, Shortelle contacted Yaghoobi and informed her that her employment was suspended indefinitely and that she was prohibited from returning to TMC.

On August 25, TMC requested that the police conduct a wellness check on Yaghoobi.  Yaghoobi was not there when the police visited her apartment, but her building concierge later apprised her of the attempted wellness check.

A few weeks later, Yaghoobi filed a healthcare fraud complaint against TMC with the Office of Inspector General for the Department of Health and Human Services ("HHS OIG").

On November 20, 2023, Shortelle notified the plaintiff on behalf of TMC that she was considered to have voluntarily resigned effective immediately.

The plaintiff subsequently filed an administrative discrimination complaint with the Equal Employment Opportunity Commission (EEOC) and in May 2024 received a right-to-sue letter.[2]

## II.  The Amended Complaint

Against this backdrop, the amended complaint asserts the following claims against the moving defendants:

---

[2] The amended complaint did not include this allegation when initially filed in March 2024 (D. 13), but the court on January 2, 2025 allowed the plaintiff's motion for leave to amend the amended complaint to include it. (D. 92).  In so doing, and for administrative ease, the court did not authorize the plaintiff to file a second amended complaint.  Rather, the amended complaint remains the operative charging document, but it may now be read to include the allegation that the plaintiff filed an administrative complaint with the EEOC and thereafter received a right-to-sue letter.

Count One alleges a violation of 42 U.S.C. § 1983 ("Section 1983") against TMC and Dr. Popso;

Count Two alleges a violation of the Americans with Disabilities Act (ADA) against TMC;

Count Three alleges mail and wire fraud against TMC and Tufts Medicine in violation of 18 U.S.C. §§ 1341 and 1343, respectively;

Count Four alleges that TMC, Shortelle, Dr. Qamar, Dr. Popso and others conspired to violate the plaintiff's constitutional rights, in violation of 18 U.S.C. § 241;

Count Five alleges obstruction of justice and witness tampering against TMC and Tufts Medicine, in violation of 18 U.S.C. §§ 1503 and 1512, respectively;

Count Six alleges that Shortelle violated the federal Freedom of Access to Clinic Entrances Act of 1994 (FACE), 18 U.S.C. § 248;

Count Seven alleges common law fraud against TMC;

Count Nine alleges that TMC and Dr. Popso violated the plaintiff's right to privacy;

Count Ten alleges breach of confidentiality against TMC and Dr. Popso;

Count Eleven alleges defamation against TMC and "multiple defendants";

Count Twelve alleges intentional infliction of emotional distress against TMC, Shortelle, and Dr. Popso;

Count Thirteen alleges false imprisonment against TMC and Dr. Popso;

Count Fourteen alleges breach of an employment contract against Shortelle and Dr. Roberts;

Count Fifteen alleges retaliation against TMC for voicing concerns about medical fraud and patient care quality; and

Count Sixteen alleges that TMC interfered with the plaintiff's economic opportunities.

### III. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide "enough facts to state a claim [for] relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The facts, accepted as true, must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the allegations must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and must show more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

Pro se litigants[3] are held to a relaxed pleading standard "to avoid inappropriately stringent rules and unnecessary dismissals."

---

[3] The plaintiff filed the amended complaint pro se but has since obtained counsel.

*Sergentakis* v. *Channell*, 272 F. Supp. 3d 221, 224 (D. Mass. 2017). However, "this cannot be taken to mean that pro se complaints are held to no standard at all." *Id.* at 224-225.

As discussed below, the court finds that Counts Two, Thirteen, and Fifteen assert valid claims but the remainder of the referenced claims do not and will be dismissed.

## IV. Analysis

Count One - Violation of Section 1983

Count One alleges that TMC and Dr. Popso violated Yaghoobi's civil rights under Section 1983. Section 1983 creates a private right of action against any person who, under color of state law, "subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. A claim under Section 1983 has two elements: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999) (additional citation omitted). The plaintiff contends here that the defendants violated her right to liberty and to protection from an unwarranted seizure.

Even accepting the pled facts as true, Count One fails to state a viable Section 1983 claim because the plaintiff fails to allege facts showing that TMC, a private healthcare facility, and Dr. Popso, one of its employees, were ever acting "under color of state law." *See McEntee v. Beth Israel Lahey Health, Inc.*, 685 F.Supp.3d 43, 50 (D. Mass. 2023) ("For [a] defendant to have acted under color of state law, its actions must be 'fairly attributable to the State.'").  This matters because Section 1983 "does not apply to 'merely private conduct, no matter how discriminatory or wrongful.'" *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  As Count One appears to relate to merely private conduct, it fails to assert a § 1983 claim against the moving defendants and will be dismissed.

<u>Counts Two and Fifteen – Violation of the ADA</u>

Count Two alleges a violation of the ADA, 42 U.S.C. §§ 12101-12213.  Among other things, the ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability in regard to the "advancement" or "discharge" of an employee, or other "terms, conditions, and privileges" of their employment. *See* 42 U.S.C. § 12112(a).  The plaintiff contends here that TMC treated her unfairly because it perceived her to suffer from a mental health disability (Count Two).  In addition

to Count Two, Count Fifteen alleges unlawful retaliation.  Although Count Fifteen does not explicitly reference the ADA, TMC reads it to allege wrongful retaliation in violation of the ADA.  *See* 42 U.S.C. § 12203 (prohibiting discrimination against one who has among other things opposed any act or practice made unlawful by the ADA).  In this regard, the plaintiff, who did not challenge TMC's characterization of Count Fifteen in her opposition to the motion to dismiss[4], alleges that TMC retaliated against her when she raised concerns about medical fraud.

TMC argues that both claims fail because (1) the amended complaint fails to allege that the plaintiff exhausted available administrative remedies by filing an administrative charge with the EEOC, and (2) the plaintiff's pending EEOC charge indicates she has not yet exhausted the available administrative remedies. *See Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277 (1st.

---

[4] To be clear, the plaintiff, in moving for leave to amend the amended complaint (D. 79), did request that Count Fifteen be amended to allege a violation of 41 U.S.C. § 4712 which among other things prohibits reprisals against employees of federal contractors who have reported alleged wrongdoing to an Inspector General, something the plaintiff contends happened here. However, given that (1) the present motion to dismiss was pending at the time the plaintiff filed her pro se motion to amend; (2) the plaintiff did not make this assertion or challenge TMC's characterization of Count Fifteen in her opposition to the motion to dismiss; (3) the plaintiff has since obtained counsel; and (4) the court has for now determined that Count Fifteen may go forward, the court has in its discretion declined to act on this portion of the plaintiff's pro se motion.  Assisted now by counsel, the plaintiff may seek leave to amend Count Fifteen should it appear warranted.  That said, the court's suggestion should not be interpreted as an advance ruling that any such motion would necessarily be granted; that will turn on a consideration of the facts of the case and the factors governing the amendment of complaints set out in Fed. R. Civ. P. 15.

Cir. 1999) (plaintiff must first exhaust administrative remedies by filing an administrative charge with the EEOC or MCAD).  The arguments are without merit here.

First, while it is true that the plaintiff, to prevail, will need to show that she properly exhausted administrative remedies, most courts agree that there is no requirement that a complaint plead satisfaction of this precondition to survive a Rule 12(b)(6) motion.  *See, e.g., Robertson v. Barber Foods*, LLC, No. 2:19-CV-00455-NT, 2020 WL 3104047, at *4 (D. Me. June 11, 2020) (concluding that a Title VII claim does not require plaintiffs to plead exhaustion but that failure to exhaust may be an affirmative defense); *see also Martinez-Rivera v. Commonwealth of Puerto Rico*, 812 F.3d 69, 77 (1st Cir. 2016) (noting that the ADA incorporates Title VII's enforcement provisions).  Further, assuming *arguendo* that a complaint must plead exhaustion of remedies to withstand a motion to dismiss, the amended complaint now satisfies that requirement where the court has granted the plaintiff's motion for leave to amend to allege such facts.  *See* D. 92.  Moreover, notwithstanding TMC's assertion that the plaintiff presently has a matter pending before the EEOC, the plaintiff avers that she has nonetheless received a right-to-sue letter.  As the court has received no documentation from either party on this issue of fact, the court will for now credit the plaintiff's allegation that she

properly exhausted administrative remedies with respect to any ADA claim, and thus finds that Counts Two and Fifteen are not deficient on that ground and may for now go forward.

<u>Counts Three - Five - Violation of Federal Criminal Statutes</u>

Counts Three, Four, and Five assert claims against various defendants for violating federal criminal statutes concerning mail and wire fraud, 18 U.S.C. §§ 1341, 1343 (Count Three); conspiracy to violate constitutional rights, 18 U.S.C. § 241 (Count Four); and obstruction of justice and witness tampering, 18 U.S.C. §§ 1503, 1512 (Count Five).  All three counts fail summarily to assert viable claims because none of the referenced statutes authorizes an individual plaintiff to bring a private civil action against another for a violation thereunder.  *See e.g., Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir. 1999) (complaint alleging violation of 18 U.S.C. § 1341 dismissed because there is no private cause of action under the mail fraud statute); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178 (6th Cir. 1979) (18 U.S.C. § 1343 does not create a private right of action); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 . . ."); *Scherer v. United States*, 241 F.Supp.2d 1270, 1282 (D. Kansas 2003) (no private cause of action exists under federal obstruction of justice statute, 18 U.S.C. § 1503); *Reilly*

*v. Concentrex, Inv.*, No. CIV 99-983-HU, 1999 WL 1285883 (D. Or. Nov. 19, 1999) (no private cause of action under § 1512).  Counts Three, Four, and Five therefore will be dismissed.

<u>Count Six – FACE Violation</u>

Count Six alleges that Shortelle violated the FACE Act, 18 U.S.C. § 248(a).  The FACE Act protects all patients, providers, and facilities that provide reproductive health services, and imposes criminal and civil penalties for obstructing, intimidating, or interfering with persons obtaining or providing reproductive health services.  The plaintiff alleges that Shortelle "banned [her] from setting foot on [Tufts'] premises" and "prevent[ed] her access to medical services through threats." Even accepting (solely for the sake of argument) that Shortelle acted as alleged, Count Six fails to assert a viable FACE Act violation against him because there is no suggestion, let alone an allegation, that the plaintiff ever sought to enter the medical center to obtain reproductive health services, or that any defendant acted based on such a belief.  Count Six will therefore be dismissed.

<u>Count Seven – Common Law Fraud</u>

Count Seven alleges that TMC committed fraud by forging the plaintiff's signature, and in so doing "impact[ed] her civil rights."  TMC argues that Count Seven must be dismissed because it

does not meet the heightened pleading standard set out in Fed. R. Civ. P. 9(b). That Rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. . ." Fed. R. Civ. P. 9(b). More specifically, to properly state a claim for common law fraud under Massachusetts law, "a plaintiff must allege that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to [his/her] damage." *In re TelexFree Sec. Litig.*, 626 F.Supp.3d 253, 269 (D. Mass. 2022) (quoting *Taylor v. Am. Chem. Council*, 576 F.3d 16, 31 (1st Cir. 2009)). To comply with Rule 9(b), a plaintiff must also specify "the who, what, where, and when of the allegedly false or fraudulent representation." *Id.* (quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)). The court is mindful that the plaintiff was proceeding pro se when she filed the amended complaint, but that fact does not absolve her from her obligation to comply with the heightened pleading standard. *See McNeill v. Steward Health Care, LLC*, No. 19-cv-10697, 2019 WL 2330423, at *2 (D. Mass. May 31, 2019).

Against that backdrop, Count Seven fails to adequately plead a viable fraud claim against TMC. The amended complaint alleges

that the plaintiff's signature was forged, and that her medical records were manipulated and falsified to indicate that she admitted herself voluntarily, but it does not allege who specifically committed these acts, who made false representations to the plaintiff to induce her to act, how she relied upon those false representations, and how that reliance caused her to suffer harm. *See In re Telex*, 626 F.Supp.3d at 269. As such, the allegation that the plaintiff was forced to undergo an involuntary evaluation that was subsequently mischaracterized as voluntary is too vague and unspecific to put TMC (or any entity acting on its behalf) on notice as to what it is alleged to have done, and fails moreover because it does not suggest anyone induced the plaintiff to behave a certain way. Count Seven therefore will be dismissed.

<u>Count Nine – Invasion of Privacy</u>

Count Nine alleges that TMC and Dr. Popso violated the plaintiff's right to privacy by sharing her personal and medical information without her consent, presumably in violation of Massachusetts' invasion of privacy statute, M.G.L. ch. 214 § 1B. That statute proscribes the "disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 383 (2005) (citing *Bratt v. Int'l Bus. Mach. Corp.*, 392 Mass. 508, 518 (1984)).

The amended complaint alleges that TMC shared "confidential information beyond necessary billing details" with the plaintiff's insurer. Of note, the plaintiff infers this disclosure happened because she subsequently received a voicemail from her insurer offering mental health services and a letter from TMC after her hospital visit. The plaintiff similarly infers that TMC must have disclosed "confidential patient information" to the Boston Police Department because they later came to perform a wellness check on her.

The defendants argue that the amended complaint does not plead sufficient facts to establish that any alleged privacy violation was unreasonable and either substantial or serious. The court agrees. The court acknowledges the plaintiff's contention that TMC shared confidential information "beyond necessary billing details" to her insurer, but the amended complaint nonetheless pleads no facts revealing what information was shared, what aspect of the information was confidential, and why any disclosure went "beyond" what was necessary. The fact that the plaintiff's insurer called her to offer mental health services does not suffice because it at most "merely creates a suspicion of a legally cognizable right of action." *See Twombly*, 550 U.S. at 555. Similarly, even accepting that TMC asked the police to check on the plaintiff, that contention does not reasonably suggest that TMC necessarily

14

must have first conveyed confidential information to the police, as "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Count Nine will accordingly be dismissed.

### Count Ten – Breach of Confidentiality

Count Ten alleges that TMC and Dr. Popso exercised "improper management and disclosure of [the plaintiff's] sensitive information." The defendants read Count Ten as alleging a violation of the Health Insurance Portability and Accountability Act ("HIPAA"), 29 U.S.C. § 1181, which regulates the treatment of personally identifiable health information and limits what information institutions and providers may disclose to others. The defendants argue that Count Ten fails to assert a valid HIPPA claim because the statute does not create a private cause of action. They are correct. *See Miller v. Nichols*, 586 F.3d 53, 59-60 (1st Cir. 2009). To the extent the plaintiff may be heard to counter that Count Ten purports to allege something other than a violation of HIPAA, or invasion of the plaintiff's right to privacy (Count Nine), it fails under Fed. R. Civ. P. 8(a)(2) to provide to a clear statement demonstrating the plaintiff's entitlement to relief from any of the named defendants. Count Ten will thus be dismissed.

<u>Count Eleven - Defamation</u>

Count Eleven alleges that TMC, along with "multiple defendants," defamed the plaintiff. To prevail on a defamation claim, the plaintiff must show that (1) the defendant published a statement (2) concerning her that was both (3) defamatory and (4) false, which (5) caused the plaintiff to suffer economic harm or harm to her reputation. *See e.g., Noonan v. Staples*, 556 F.3d 20, 25 (1st Cir. 2009). The plaintiff claims that the defendants defamed her here by making "false statements about her mental health and professionalism," which "pushed her into whistleblowing," and consequently damaged her reputation. The plaintiff characterizes TMC's call to the Boston Police Department in particular as a defamatory incident meant to "stigmatize [the plaintiff] with a mental health issue," which ultimately damaged her reputation in her building.

Count Eleven fails to plead a viable defamation claim because the amended complaint does not identify what false and defamatory statement(s) any defendant allegedly made and thereby fails to provide any defendant with adequate notice of what they allegedly did. This omission is especially critical here where the plaintiff contends only that TMC "dispatched the police to conduct a wellness check" at her apartment. As the court expressed above, the plaintiff's hunch that statements made to the police or others

must have been false and pejorative is too speculative to viably allege that a defendant disclosed personal information regarding the plaintiff, let alone false and defamatory information. Count Eleven thus fails to plead a valid defamation claim and will be dismissed.

### Count Twelve – Intention Infliction of Emotional Distress

Count Twelve asserts a claim for intentional infliction of emotional distress ("IIED") against TMC, Shortelle, and Dr. Popso. To prevail on an IIED claim, a plaintiff must show "(1) that the defendant intended, knew, or should have known that [his/her] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *See, e.g.*, *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014).

Count Twelve fails to state a valid IIED claim because it is precluded by the Massachusetts Workers' Compensation Act ("WCA"), M.G.L. ch. 152, § 26. The WCA bars common law personal injury actions against employers when (1) the claimant is an employee, (2) the condition is within the WCA's definition of personal injury, and (3) the injury arose out of and in the course of the claimant's employment. *Id.*; *Brown v. Nutter, McClennen & Fish*, 696 N.E.2d 953, 955 (Mass. App. Ct. 1998). As the defendants correctly argue, the plaintiff was an employee at the time of the

incident and all of her salient allegations concern events arising from her time as a TMC pathology resident.  Thus, her IIED claim fails as a matter of law.  *See Uwakwe v. Pelham Acad.*, 286 F.Supp.3d 213, 227-228 (D. Mass. 2017) (WCA's exclusivity provision barred plaintiff's IIED claim).

Independently, Count Twelve fails to plead a viable IIED claim against Dr. Popso where the amended complaint fails to state what he is alleged to have done.  It also fails against Shortelle inasmuch as the core allegations against him -- that he reportedly told the plaintiff that she was banned from entering the facility, was indefinitely suspended, and later was deemed to have voluntarily resigned -- fall short of amounting to conduct so extreme and outrageous as to shock the conscience.  This is particularly the case where the amended complaint pleads no facts suggesting that Shortelle understood there was no basis to make the comments he allegedly made to the plaintiff.

<u>Count Thirteen – False Imprisonment</u>

Count Thirteen asserts a claim of false imprisonment against TMC and Dr. Popso on the ground that the plaintiff was "restrain[ed] without legal justification."  Under Massachusetts law, the tort of false imprisonment consists of the (1) intentional and (2) unjustified (3) confinement of a person, (4) of which the confined person is directly or indirectly (5) conscious or is

harmed by the confinement. *See Dagi v. Delta Airlines, Inc.*, 961 F.3d 22, 29 (1st Cir. 2020). Fundamentally, a false imprisonment claim requires unlawful confinement by force or threat. *Gallagher v. South Shore Hosp., Inc.*, 197 N.E.3d 885, 831-832 (Mass. App. Ct. 2022).

The defendants argue Count Thirteen should be dismissed because (1) the court lacks subject matter jurisdiction over the claim and (2) Yaghoobi's allegations are too vague and conclusory to state a claim for relief. Neither argument persuades here.

Regarding subject matter jurisdiction, the defendants argue that the court would lack subject matter jurisdiction to hear this state common law claim assuming all other federal claims asserted in the amended complaint were dismissed. *See e.g., United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). The defendants' proposition is legally correct, but the argument is unavailing here where the court has declined to dismiss Counts Two and Fifteen.

Regarding the allegation that Count Thirteen is impermissibly vague, the court agrees that the amended complaint surely could benefit from some additional clarity but finds that it is sufficiently clear on this claim to withstand Rule 12(b)(6) scrutiny. In a light most favorable to the plaintiff, the amended

complaint may fairly be read to allege that TMC and its employees intentionally confined the plaintiff against her will to force her to undergo an examination. The amended complaint admittedly does not explicitly identify Dr. Popso as the principal culprit, but the court infers from his being named that he allegedly directed or participated in the forced evaluation. The merits *vel non* of this claim will be revealed through discovery but for now it may go forward.

<u>Count Fourteen – Breach of Contract</u>

Count Fourteen alleges that TMC, Shortelle, and Dr. Roberts "breach[ed] [the plaintiff's] employment contract, violat[ed] ACGME standards,[5] and infring[ed] [upon the plaintiff's] employment rights through unjust suspension and denial of workplace access."

For a breach of contract claim to survive a motion to dismiss, a plaintiff must do more than allege in a conclusory fashion that a defendant breached a contract. She must describe, "with substantial certainty" the contractual term(s) the defendant purportedly violated. *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007). The First Circuit has interpreted Rule 12(b)(6) to "require[] that plaintiffs allege a factual predicate concrete enough to warrant further proceedings." *Buck v. American Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007)

---

[5] "ACGME" refers to the Accreditation Council for Graduate Medical Education.

(upholding dismissal of contract claim that failed to allege sufficient facts) (internal quotations omitted). Indeed, the First Circuit has explained that in order to survive a motion to dismiss, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66-67 (1st Cir. 2004). "In a contract action, this irreducible minimum requires the pleader to explain what obligations were imposed on each of the parties by the alleged contract." *Buck*, 476 F.3d at 38 (internal quotations omitted).

The amended complaint does not meet this standard. Putting aside for the moment the amended complaint's allusion to an "employment contract," the plaintiff does not allege, and there is no basis to believe, that the standards of the ACGME created a cognizable contract between the plaintiff and TMC. Similarly, the plaintiff's allegation that her suspension and denial of workplace access infringed on her "employment rights" does not facially or plausibly suggest the existence or violation of a specific contract.

Returning then to the plaintiff's claim that the defendants breached an "employment contract," the claim fails summarily against Shortelle and Dr. Roberts where the amended complaint fails to plead facts showing that either defendant ever entered into a

contract with the plaintiff or committed an act that would constitute a breach of a specific provision of an identified contract.

That reduces Count Fourteen to alleging that TMC alone breached an employment contract. In that regard, the plaintiff neither identifies the contract, specifies its terms, nor articulates how TMC reportedly breached it. To be sure, the plaintiff alleges that the defendants effectuated her "unjust suspension and denial of workplace access," but this allegation is insufficient where the plaintiff fails to identify the specific source proscribing that conduct, e.g., an employee handbook or other TMC document, or states how and why that source amounts to an enforceable contract. The failure to do so deprives TMC of its right to "fair notice of the . . . grounds upon which [the claim] rests" and makes it impossible for them to investigate the plaintiff's claims. *Twombly*, 550 U.S. at 555.

In sum, Count Fourteen will be dismissed. Should the plaintiff persist in contending that there are specific facts supporting a viable claim of breach of an enforceable written contract, she may always seek leave of court to amend.

<u>Count Sixteen – Interference with Advantageous Relationships</u>

Count Sixteen asserts a claim of "economic advantage interference" against TMC for engaging in "severe retaliation

[that] forced [the plaintiff] into whistleblowing, [which] adversely affect[ed] her career prospects and trust in the U.S. medical system." The defendants treat this count as alleging tortious interference with contractual and advantageous business relations, a characterization the plaintiff has not challenged. To prevail on such a claim, a plaintiff must show that (1) she had an existing contract with a third party; (2) the defendant knowingly interfered with that contract by inhibiting a party's performance; (3) the defendant's interference was intentional and improper; and (4) the plaintiff was harmed by the defendant's actions. *ITyX Sols., AG v. Kodak Alaris Inc.*, No. 16-cv-10250-ADB, 2018 WL 2392004, at *13 (D. Mass. May 25, 2018).

TMC reads Count Sixteen as alleging that the advantageous relationship at issue here was not one between the plaintiff and a third party, but rather the relationship between the plaintiff and TMC itself. As such, TMC reads Count Sixteen as alleging that TMC interfered with its own relationship with the plaintiff, to the plaintiff's detriment. TMC argues, correctly, that a plaintiff may not assert a tortious interference claim against her employer when the contract/relationship in question is the actual employer/employee relationship itself. *See Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 304 (1st Cir. 2014).

That said, and recognizing as noted elsewhere that the amended complaint could be clearer, the court reads Count Sixteen somewhat differently than TMC.  To the court, Count Sixteen alleges that TMC's actions have harmed the plaintiff's ability going forward to obtain future employment with other institutions in the medical field.  The claim fails even under this interpretation, though, because a plaintiff must nonetheless allege the existence of a specific relationship or potential contract with an identified entity that the defendant harmed.  *See Blackstone v. Cashman*, 860 N.E.2d 7, 12 (Mass. 2007) (defining an advantageous relationship as a present or prospective contract or employment relationship); *see also Sensitech Inc. v. LimeStone FZE*, 548 F.Supp.3d 244, 258-259 (D. Mass. 2021) (dismissing a tortious interference counter-claim because the defendants failed to identify any specific contract, relationship, or opportunity that was lost due to the plaintiff's actions).  Even assuming that the incidents underlying the amended complaint could impact the plaintiff's future employment prospects, that alone is insufficient to provide the basis for a valid interference claim; a defendant cannot interfere with a relationship that does not yet exist.

Count Sixteen thus fails to state a valid claim and will be dismissed.

**V.    Conclusion**

The defendants' motion to dismiss (D. 57) is <u>denied</u> with respect to Counts Two, Thirteen, and Fifteen, and <u>granted</u> with respect to Counts One, Three, Four, Five, Six, Seven, Nine, Ten, Eleven, Twelve, Fourteen, and Sixteen.  The amended complaint shall for now be read to assert claims of violation of the ADA against TMC (Counts Two and Fifteen[6]), and false imprisonment against TMC and Dr. Popso (Count Thirteen).  The complaint shall be dismissed with respect to all other defendants.  Defendants TMC and Dr. Popso shall file an answer to the amended complaint within 14 days of this Order.

**<u>So Ordered</u>**.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  January 13, 2025

---

[6] The court is mindful that the plaintiff may seek leave to amend Count Fifteen to assert a violation of 18 U.S.C. § 4712 rather than the ADA.  For the reasons noted in footnote 4, the court at present takes no position on the merits or likelihood of that possibility.